UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:23-cr-160 (SRU) |
| v. | |
| EPHREM D. NGUYEN | March 1, 2024 |

**<u>GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING</u>**

The Government submits this memorandum in connection with the upcoming sentencing of defendant Ephrem D. Nguyen, scheduled for March 5, 2024. Nguyen took advantage of his position of authority in the United States Postal Service to demand bribes and embezzle funds. Under the statutory sentencing factors, a substantial term of imprisonment is necessary to address his corrupt conduct.

**I.    OFFENSE CONDUCT**

Beginning in 2003, the defendant was employed by the United States Postal Service ("USPS") as the Postmaster of the Danbury Post Office. Presentence Report ("PSR") ¶ 8. A Postmaster is a public official responsible for managing the operation of a medium or large post office and its stations or branches. *Id.* Among other things, the defendant supervised the maintenance and repair of all vehicles assigned to the Danbury Post Office. *Id.*

From November 2020 until his termination in February 2023, the defendant used his position of authority to defraud the USPS, both by demanding bribes and embezzling funds, ultimately causing approximately $933,553.42 in loss. PSR ¶¶ 9, 23.

With respect to the bribery portion of his scheme, the defendant demanded $90,000 in bribes, as well as free vehicle maintenance for himself and others, from Michael Lutz,[1] the young

---

[1] On February 21, 2024, Lutz pled guilty to conspiracy to commit honest services wire fraud. *See United States v. Michael D. Lutz*, 3:24-cr-29 (SRU), Dkt. #5.

general manager of Vendor-1, a USPS vendor identified in the Information [Dkt. #3] and the Plea Agreement's Stipulation of Offense Conduct and Relevant Conduct [Dkt. #7]. PSR ¶¶ 11–12, 14–16. In exchange for these bribes, the defendant sent all Danbury Post Office automotive repair and maintenance work to Vendor-1 and approved fraudulent invoices causing the USPS to overpay Vendor-1 by approximately $843,221.32 between October 2021 and January 2023. PSR ¶¶ 13, 17–19.

In his embezzlement scheme, the defendant stole money from the USPS in two ways. PSR ¶¶ 20–22. First, he used USPS credit cards to rent approximately $81,886.19 worth of cars for himself and others. PSR ¶ 21. These rentals ranged from numerous luxury cars to a minivan, for periods lasting more than a year to only one day. *Id.* Second, the defendant also fraudulently used the USPS travel reimbursement system to repay approximately $8,445.91 of a $10,000 personal loan he had solicited from a USPS employee he supervised. PSR ¶ 22.

In early 2023, facing discovery of his corruption, the defendant repeatedly attempted to obstruct the federal investigation into his conduct. First, on January 31, 2023, the defendant coached Lutz how to conceal the $90,000 of bribe payments from federal agents, telling him to focus on Vendor-1's invoices, since "the 90 is off the books" and "the 90 doesn't, it's not there." PSR ¶ 26. Second, the next day, the defendant lied in an interview with those same agents, falsely denying receiving anything (and specifically cash) in return for sending USPS business to Vendor-1 or using USPS funds for his personal use. PSR ¶ 27. Third, on February 3, 2023, the defendant again instructed Lutz to mislead the investigation, telling him:

- "there is no paper trail whatsoever" for the bribes;
- "nobody can trace it…it's not deposited anywhere";
- "so to you, to them, it's nowhere";

- "If they asked that question, it means they don't know.  They have no idea that there, it never happened";

- "If they if they already know, let's put it this way: if they know what we do, they're not going to come knocking and asking questions.  They already handcuffed me and they handcuffed you.  So now they're just digging";

- "We need to be on the same page"; and

-  To lie about the free services performed by Vendor-1 on the defendant's personal car.   PSR ¶ 28.

Finally, on February 6, 2023, during a second interview with federal agents, the defendant again lied, falsely denying receiving anything of value from Vendor-1, including free services or cash, and denying using a USPS credit card to rent cars for his personal use, in particular either an Audi Q7 or a GMC Yukon.   PSR ¶ 29.

## II.	DISCUSSION

The sentencing factors under 18 U.S.C. § 3553(a) call for a sentence that includes a substantial term in prison.

### A.	The Sentencing Guidelines

There is no dispute that the applicable Guideline is § 2C1.1, covering "Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right; Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions."   The parties and Probation also agree that the calculations under that Guideline results in an offense level of 31 and an advisory sentencing range of 108 to 135 months of imprisonment, a fine of $30,000 to $300,000, and supervised release of one to three years.   PSR ¶¶ 3, 35–47, 99.

The defendant argues that the Court should discard the Guidelines entirely because § 2C1.1 places "problematic reliance" on the loss table in § 2B1.1. Def's Mem. [Dkt. #26] at 12–13. Admittedly, the large loss that the defendant's corruption caused the USPS has a significant impact on his total offense level, adding 14 points. However, even if the Court were to disregard that enhancement, the defendant's offense level would have been 17 and his advisory sentencing range would still have been 24 to 30 months—more than double the year-and-a-day sentence he requests. Indeed, the base level of 14, by itself (*i.e.*, ignoring enhancements for loss, multiple bribes, high-level decision-making position, and obstruction of justice) results in a sentence of 15 to 21 months. Again, in order to reach those ranges, one must entirely discard loss—even assuming that § 2B1.1's loss table overstates the seriousness of the offense, it cannot be the case that the defendant's $900,000 fraud should be put on equal footing with one that caused no loss.

The defendant also attacks the Guidelines by pointing out the differences between the Guidelines applicable to different crimes, namely, public corruption offenses like his (§ 2C1.1) versus fraud (§ 2B1.1) or robbery (§ 2B3.1). Def's Mem. at 13–14. Those differences are not surprising, and it seems necessary that a useful set of Guidelines would need to account for different varieties of criminal conduct. The defendant now has a plain incentive to contend that fraud and robbery should have higher Guideline ranges than corruption, but shows no reason why his self-serving value judgment is superior to the Sentencing Commission's independent one. Indeed, given the difficulty of successfully prosecuting corruption and the systemic harm that type of offense poses to governmental credibility, there is good reason why the Sentencing Commission might recommend a greater sentence for the defendant's abuse of authority and lack of integrity than if he had used some other criminal method to obtain money.

**B.      Nature and Circumstances of the Offense, Seriousness of the Offense, Respect for the Law, Just Punishment, and Adequate Deterrence**

The nature and circumstances of this offense are extremely serious, and just punishment, respect for the law, and the need to send a deterrent message call for a substantial term of imprisonment.

The defendant ran the Danbury Post Office as his personal fiefdom. Rather than an error in judgment or a lapse in an otherwise admirable career, the defendant used his position of authority over more than two years to systematically squeeze personal benefit from the USPS. He solicited a personal loan from an employee he supervised. PSR ¶ 22. He forced USPS vendors to provide him with free automotive services. PSR ¶ 12. He solicited $90,000 in bribes from Vendor-1. PSR ¶¶ 14–16. He used USPS credit cards to pay for luxury cars as if they were his own. PSR ¶ 21. And he used USPS funds to repay his loan. PSR ¶ 22.

That corrupt conduct imposed a real cost on others. As a matter of dollars and cents, Nguyen caused the USPS more than $900,000 in loss. As a longtime USPS official, the defendant was presumably aware of the tenuous financial condition of his agency. *See* https://www.gao.gov/blog/u.s.-postal-service-faces-more-financial-losses-how-can-it-stem-tide (last visited March 1, 2024) ("USPS's revenues haven't covered its expenses and debt for more than 15 years. And its expenses are growing faster than its revenues…. USPS has been able to continue operating in this situation by increasing its debt and unfunded liabilities."). Ironically, part of the USPS plan to regain solvency is to address its aging vehicle fleet, *see id*., which the defendant seems to have exploited as part of his fraud. While his theft is only a small fraction of the USPS operating deficit, his willingness to steal from his agency under these circumstances deepens the level of willful betrayal and the need for a corresponding punishment.

Less quantifiably, the defendant also chipped away at the credibility of one of the nation's best regarded government entities. *See* https://news.gallup.com/poll/512585/government-agency-ratings-remain-largely-negative.aspx (last visited March 1, 2024); https://www.pewresearch.org/short-reads/2023/03/30/americans-feel-favorably-about-many-federal-agencies-especially-the-park-service-postal-service-and-nasa/ (last visited March 1, 2024). This is particularly repugnant to the reputation of the Post Office, the continued survival of which depends on citizens trusting it with their personal and important materials.

The cynical nature of Nguyen's crime, its longevity, its multiple schemes, and the direct and indirect harms it caused call for a substantial term of imprisonment, which would be just, reflect the seriousness of his offense, promote respect for the law, and send a persuasive deterrent message.

    **C.**    **Defendant's History and Characteristics**

The defense writes at length about the defendant's personal history, including his life as an immigrant, his struggle with alcohol and cocaine, and his hard work to support his family. The Court should take all those circumstances into account in deciding on a sentence.

On the other hand, the Court should equally consider the defendant's behavior as the Danbury Postmaster. Given a position of power, he took advantage of underlings and vendors who depended on his honesty and diligence, and given financial responsibility, he abused it to create an illusion of personal wealth. This willingness to engage in a sustained scheme of personal corruption reflects a flaw in the defendant's moral compass not fully explained by financial necessity or familial stress. Even more damaging, given the opportunity to come clean, the defendant undertook a coverup campaign. Although he ultimately pled guilty, the defendant's multiples instances of obstructive behavior and lies—including trying to use Lutz as his pawn once again—speaks to a calculating and self-serving aspect of his character.

### D. Unwarranted Sentencing Disparity

In light of a sentencing court's responsibility to craft a sentence based on the particularized crime and defendant, it is difficult to compare sentences between cases absent complete factual detail.

To wit, the defendant points to eight corruption cases which resulted in sentences ranging from 16 months to probation. Def's Mem. at 20–21. But short summaries and the cited press releases do not make clear what motivated any of these sentencing courts, nor whether these cases implicate "defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Moreover, one can easily find other instances of seemingly similar corruption cases where defendants received a sentence substantially longer than 16 months. *See, e.g., United States v. Perez-Otero*, 3:21-cr-00474-ADC (D.P.R.), Dkt. ##3, 131 (former mayor sentenced to 63 months for accepting $15,000 in bribes in exchange for municipal contracts).

There is no reason to believe that a substantial term of imprisonment here would represent an incongruent sentence. As the PSR notes, between fiscal 2018 and 2022, 15 criminal defendants had the same Guidelines offense level under § 2C1.1 as the defendant, PSR ¶ 101, and their average term of imprisonment was 46 months (with a median of 51 months); excluding the three who received no time in prison, the average term was 54 months (with a median of 56 months). Moreover, as discussed above, the Guidelines—put in place to avoid disparity across sentencing courts, *United States v. Tappin*, 205 F.3d 536, 540 (2d Cir. 2000) ("[O]ne of the major purposes of the Guidelines was to eliminate unjustified disparities in sentences among similarly situated defendants….")—contemplate imprisonment for as long as 135 months.

Thus, a substantial term of imprisonment would not represent a sentencing disparity at all, much less an unwarranted one.

## III.     Restitution

Nguyen's crime is a mandatory restitution offense, and the defendant is in the process of negotiating surrender of his retirement account, which contains significantly less than $933,553.42. Although the judgment should reflect that the defendant is jointly and severally liable for the total restitution amount, the Government expects that the balance will be collected from other sources.

*     *     *

For the above reasons, the Government recommends the Court impose a substantial term of imprisonment.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

_____/s/_____
JONATHAN N. FRANCIS
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv05083
jonathan.francis@usdoj.gov
157 Church Street, 25th Floor
New Haven, CT   06510
Tel.: (203) 821-3700

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2024 a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/
JONATHAN N. FRANCIS
ASSISTANT UNITED STATES ATTORNEY